IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

KENNETH HINTON,                    )
    **Plaintiff,**                      )
                                       )
    **v.**                              )          **No. 1:09cv170**
                                       )
TRANS UNION, LLC, et al.,          )
    **Defendants.**                     )

### MEMORANDUM OPINION

In this Fair Credit Reporting Act ("FCRA")[1] suit, plaintiff, proceeding *pro se* and *in forma pauperis*, claims that defendant consumer reporting agencies violated the FCRA and Virginia state-law credit reporting laws, thus damaging plaintiff and entitling him to monetary and injunctive relief. Defendants move to dismiss plaintiff's first amended complaint, pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim on which relief can be granted. By Order dated July 31, 2009, defendants' motion to dismiss was taken under advisement pending defendants' submission of a supplemental memorandum in support of the motion. *See Hinton v. Trans Union, LLC*, No. 1:09cv170 (E.D. Va. July 31, 2009) (Order). Defendants complied, and the matter is now ripe for disposition. Oral argument is dispensed with, as the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.

### I.

Plaintiff Kenneth Hinton, a Virginia resident, is no stranger to federal civil litigation. Indeed,

---

[1] 15 U.S.C § 1681 *et seq.*

-1-

a review of federal district court dockets[2] around this country reveals that since 2000, plaintiff has filed at least forty-three other federal civil lawsuits; three of those lawsuits remain pending,[3] at least fourteen have been dismissed as frivolous or by orders indicating that any appeal by plaintiff would be considered in bad faith,[4] and the remaining twenty-six have been dismissed without granting plaintiff any relief—often for failure to state a claim on which relief can be granted.[5] In those

---

[2] In this regard, it is well-settled that in ruling on a motion to dismiss, a court "may properly take judicial notice of matters of public record." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

[3] *See Hinton v. Supportkids, Inc.*, No. 1:09cv284 (W.D. Tex.); *Hinton v. Monster Worldwide, Inc.*, No. 1:09cv2629 (S.D.N.Y.); *Hinton v. Rudasill*, No. 8:08cv1460 (D. Md.).

[4] *See Hinton v. Peanut Corp. of Am.*, No. 6:09cv10 (W.D. Va. Feb. 12, 2009) (Order); *Hinton v. Hearns*, No. 1:08cv608 (E.D. Va. July 2, 2008) (Order); *Hinton v. United States*, No. 4:02cv2301 (M.D. Pa. May 29, 2003) (Order); *Hinton v. Ford Motor Co.*, No. 4:01cv2536 (N.D. Ohio Mar. 20, 2003) (Mem. Op. and Order); *Hinton v. Parsons*, No. 4:02cv1061 (N.D. Ohio Feb. 12, 2003) (Mem. Op. and Order); *Hinton v. Scott*, No. 5:03ct719 (E.D.N.C. Oct. 7, 2003) (Order); *Hinton v. Bridgestone/Firestone, Inc.*, No. 4:01cv1113 (N.D. Ohio Dec. 17, 2002) (Mem. Op. and Order); *Hinton v. Spooner*, No. 4:02cv962 (N.D. Ohio July 24, 2002) (Mem. Op. and Order); *Hinton v. McDonald's Corp.*, No. 8:01cv1400 (D. Md. June 27, 2002) (Order); *Hinton v. Jackiewicz*, No. 4:01cv2284 (M.D. Pa. May 14, 2002); *Hinton v. DaimlerChrysler Corp.*, No 4:02fp40071 (E.D. Mich. Apr. 4, 2002) (Order); *Hinton v. Rajjoub*, No. 4:01cv2234 (M.D. Pa. Feb. 28, 2002) (Order); *Hinton v. Oslund*, No. 4:01cv2767 (N.D. Ohio Feb. 15, 2002) (Order); *Hinton v. Rajjoub*, No. 4:01cv795 (M.D. Pa. May 30, 2001) (Order); *Hinton v. Crigger*, No. 4:00cv1693 (M.D. Pa. Oct. 13, 2000) (Order).

[5] *See Hinton v. Trudeau*, No. 1:09cv786 (N.D. Ill. June 30, 2009) (Minute Entry); *Hinton v. Rudasill*, No. 1:08cv1073 (D.D.C. June 12, 2009) (Order); *Hinton v. Corr. Corp. of Am.*, No. 1:08cv778 (D.D.C. June 11, 2009) (Order); *Hinton v. Corr. Corp. of Am.*, No. 1:08cv312 (D.D.C. June 11, 2009) (Order); *Hinton v. Heartland Payment Sys., Inc.*, No. 3:09cv594 (D.N.J. Mar. 16, 2009) (Order); *Hinton v. Bangs*, No. 1:08cv628 (E.D. Va. June 24, 2008) (Order); *Hinton v. McCormick*, No. 8:05cv2295 (D. Md. Feb. 28, 2006) (Order); *Hinton v. Desta*, No. 1:04cv2272 (D.D.C. Feb 27, 2006) (Order); *Hinton v. Baron*, No. 1:05cv20 (D.D.C. Sept. 28, 2005) (Order); *Hinton v. Equifax Info. Servs., LLC*, No. 8:04cv3950 (D. Md. Aug. 31, 2005) (Order); *Hinton v. Global Settlements LLC*, No. 8:04cv3754 (D. Md. Mar. 24, 2005) (Order); *Hinton v. Williams*, No. 1:02cv357 (D.D.C. Mar. 1, 2005) (Mem. Op.); *Hinton v. U.S. Parole*

lawsuits, plaintiff has filed frivolous complaints against a wide range of defendants, including well-known corporations such as McDonald's, R.J. Reynolds Tobacco, DaimlerChrysler, Ford Motors, Avis Rent-a-Car, Bridgestone/Firestone, and Enron.[6] For example, in 2001 plaintiff filed a complaint in the District of Maryland alleging that McDonald's violated his First and Fourteenth Amendment rights by selling him french fries that were not, as plaintiff claimed had been advertised, "cooked in one hundred percent pure vegetable oil." *Hinton v. McDonald's Corp.*, No. 8:01cv1400, at 2 (D. Md. June 27, 2002) (Mem. Op.) (dismissing complaint for failure to state a claim). Notably, in 2004 plaintiff filed an FCRA claim against the same three defendants he has sued here,[7] and in 1994

---

*Comm'n*, No. 5:04hc786 (E.D.N.C. Dec. 13, 2004) (Order); *Hinton v. United States*, No. 4:03cv1725 (N.D. Ohio May 28, 2004 (Order); *Hinton v. United States*, No. 1:02cv2319 (D.D.C. Jan. 8, 2004) (Mem. Op.); *Hinton v. Stein*, No. 1:00cv2466 (D.D.C. Aug. 20, 2003) (Mem. Op.); *Hinton v. United States*, No. 4:03cv587 (N.D. Ohio Aug. 19, 2003) (Order); *Cunningham v. Scott*, No. 5:02ct944 (E.D.N.C. July 17, 2003) (Order); *Hinton v. Lindauer*, No. 2:03cv551 (S.D. Ohio July 7, 2003) (Order); *Hinton v. U.S. Parole Comm'n*, No. 5:02hc574 (E.D.N.C. May 28, 2003) (Order); *Hinton v. Lay*, No. 4:02cv591 (S.D. Tex. Apr. 9, 2003) (Order); *Hinton v. Shaw, Pittman, Potts & Trowbridge*, No. 1:02cv545 (D.D.C. Mar. 31, 2003) (Order); *Hinton v. Bible*, No. 1:01cv2031 (D.D.C. June 10, 2002) (Order); *Hinton v. Oslund*, No. 8:01cv3171 (D. Md. Nov. 8, 2001) (Order); *Hinton v. R.J. Reynolds Tobacco Co.*, No. 8:01cv1556 (D. Md. June 6, 2001) (Order); *Hinton v. Purchase Plus Buyers Group, Inc.*, No. 8:00cv2877 (D. Md. Feb. 27, 2001) (Order).

[6] *See Hinton v. DaimlerChrysler Corp.*, No 4:02fp40071 (E.D. Mich. Mar. 15, 2002) (application to proceed *in forma pauperis*); *Hinton v. Lay*, No. 4:02cv591 (S.D. Tex. Feb. 14, 2002) (Compl.); *Hinton v. Ford Motor Co. & Avis Rent-a-Car*, No. 4:01cv2536 (N.D. Ohio Nov. 6, 2001) (Compl.); *Hinton v. R.J. Reynolds Tobacco Co.*, No. 8:01cv1556 (D. Md. May 16, 2001) (Compl.); *Hinton v. McDonald's Corp.*, No. 8:01cv1400 (D. Md. May 14, 2001) (Compl.); *Hinton v. Bridgestone/Firestone, Inc.*, No. 4:01cv1113 (N.D. Ohio May 8, 2001) (Compl.).

[7] *See Hinton v. Equifax Info. Servs. LLC*, No. 8:04cv3950 (D. Md. Dec. 15, 2004) (Compl.).

plaintiff filed an FCRA claim against one of the three defendants in this case.[8] In addition, plaintiff has previously invoked the FCRA in at least one other dismissed lawsuit[9] and two lawsuits that are currently pending in other federal district courts.[10] In sum, as one federal district court explained in denying a motion by plaintiff to proceed *in forma pauperis*, plaintiff "has a lengthy history of filing frivolous suits in various federal courts throughout the country" and has, "[d]espite [repeated] warnings, . . . continued to clog the federal court system with frivolous lawsuits." *Hinton v. Supportkids, Inc.*, No 1:09cv284, 2009 WL 1650483, at *2 (W.D. Tex. June 11, 2009) (Order).

On February 12, 2009, plaintiff filed his original complaint in this case, claiming he is entitled to monetary relief because of various FCRA violations by defendants Trans Union, LLC ("Trans Union"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian"). More specifically, plaintiff's original complaint alleged, *inter alia*, (i) violations of 15 U.S.C. § 1861b, by all defendants; (ii) violations of 15 U.S.C. § 1681e, by all defendants; (iii) violation of 15 U.S.C. § 1681g, by Trans Union; and (iv) violation of 15 U.S.C. § 1681c–1, by Equifax. As a result of these alleged violations, plaintiff's original complaint sought actual, statutory, and punitive damages of at least $380,000, in addition to costs and attorney's fees. Plaintiff also filed an application to proceed, pursuant to 28 U.S.C. § 1915, without prepaying fees or costs, which application was granted. *See Hinton v. Trans Union, LLC*, No. 1:09cv170 (Mar. 26,

---

[8] *See Hinton v. Trans Union Corp.*, No. 1:94cv533 (D.D.C. Oct. 2, 1995) (Order) (dismissing removed case and ordering plaintiff to pay defendant's costs and expenses).

[9] *See Hinton v. Trudeau*, No. 1:09cv786 (N.D. Ill. Feb. 6, 2009) (Compl.).

[10] *See Hinton v. Supportkids, Inc.*, No 1:09cv284 (W.D. Tex. Apr. 15, 2009) (Compl.); *Hinton v. Monster Worldwide, Inc.*, No. 1:09cv2629 (S.D.N.Y. Apr. 27, 2009) (Compl.).

2009) (Order). On June 8, 2009, Trans Union filed a motion to dismiss plaintiff's original complaint, and on June 12, 2009, Experian filed a motion for judgment on the pleadings.[11]

On June 18, 2009, plaintiff filed a motion for leave to file a first amended complaint and more definite statement, which motion was granted on June 23, 2009, by the U.S. Magistrate Judge in this case. *See Hinton*, No. 1:09cv170 (E.D. Va. June 23, 2009) (Order). Accordingly, plaintiff's first amended complaint was deemed filed on June 23, 2009. In his first amended complaint, plaintiff purports to "incorporate[] all allegations, claims, assertions, statements, and theories set forth or attempted to be set forth in the Original Complaint." First Am. Compl. ¶ 1. Plaintiff's first amended complaint also includes additional allegations, including (i) violations of numerous other FCRA provisions, namely 15 U.S.C. §§ 1681h, 1681i, 1681j, and 1681m; (ii) violation of Virginia credit reporting laws, namely Va. Code § 18.2-186.3 *et seq.*; (iii) a claim for unspecified injunctive relief; and (iv) a request for an order directing defendants to "[a]ccept and act on all communications from [p]laintiff's [sic] and any of his designated authorized [sic] representatives." First Am. Compl. ¶ 41(e).

Thereafter, on July 6, 2009, all three defendants filed the instant motion, seeking to dismiss plaintiff's first amended complaint, pursuant to Rule 12(b)(6), for failure to state a claim on which relief can be granted. More specifically, defendants contend that plaintiff's first amended complaint is "completely devoid of specific factual averments to support his alleged claims and is insufficient to notify [d]efendants as to the basis of the claims asserted against them." Defs.' Mem. in Supp. 2.

---

[11] On June 17, 2009, Equifax filed a motion to join Experian's motion for judgment on the pleadings.

In addition, defendants seek in the alternative to dismiss plaintiff's claims for equitable relief on the basis that the FCRA does not provide for such relief. Plaintiff filed a response in opposition to defendants' motion, arguing that his first amended complaint properly sets forth a claim for relief under the FCRA. Alternatively, plaintiff has also filed a motion requesting leave to file a second amended complaint.[12] Plaintiff's proposed second amended complaint, attached to the motion, seeks wholesale incorporation of both the original and the first amended complaints. In addition, the proposed second amended complaint attaches a number of letters which appear to be credit denials from third-party vendors.

On July 8, 2009, defendants' motion to dismiss was noticed for a hearing at 10:00 a.m., Friday, July 31, 2009. On July 28, 2009, plaintiff filed a motion requesting leave to appear telephonically at the July 31 hearing, which motion was denied by Order dated July 29, 2009. *See Hinton*, No. 1:09cv170 (E.D. Va. July 29, 2009) (Order). On July 31, defendants appeared, by counsel, and plaintiff did not appear, nor did plaintiff file any motion to continue the hearing or otherwise setting forth good cause for his failure to appear.[13] In the course of the hearing, defendants were granted leave to file a supplemental memorandum in support of their motion, and defendants' motion was taken under advisement. Thereafter, an Order issued reflecting the July 31 proceedings and advising plaintiff that defendants' motion to dismiss would be decided on the papers without

---

[12] Plaintiff's motion for leave to file a second amended complaint has been noticed for a hearing at 10:00 a.m., Friday, August 14, 2009, before the U.S. Magistrate Judge.

[13] Notably, both Equifax's national trial counsel and Trans Union's regional counsel also filed motions to appear telephonically at the July 31 hearing, and those motions, like plaintiff's, were denied. *See Hinton*, No. 1:09cv170 (E.D. Va. July 24, 2009) (Order); *Hinton*, No. 1:09cv170 (E.D. Va. July 29, 2009) (Order). Yet, unlike plaintiff, both Equifax and Trans Union (as well as Experian) appeared, by counsel, at the July 31 hearing.

further oral argument. *See Hinton*, No. 1:09cv170 (E.D. Va. July 31, 2009) (Order). Defendants filed their supplemental memorandum in support, arguing therein that in light of plaintiff's litigious history, an Order should issue enjoining him from filing any further lawsuits in this jurisdiction without first obtaining leave to do so. Accordingly, the matter has been fully briefed and is now ripe for disposition.

## II.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim *showing that the pleader is entitled to relief.*" Rule 8(a)(2), Fed. R. Civ. P. (emphasis added). Of course, a complaint cannot show entitlement to relief without referencing in some way the legal basis for the relief requested and the factual basis for the claim. Indeed, the Supreme Court has recently and sensibly declared that threshold dismissal pursuant to Rule 12(b)(6) must be granted unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It follows that to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. And in this respect, it is also true that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal* conclusions." *Id.* (emphasis added). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id., quoted in Walker v. Prince George's County, Md.*, ___ F.3d ___, No. 08-1462, 2009 WL 2343614, at *5 (4th Cir. July 30, 2009) (O'Connor, J.). Justice Kennedy succinctly summarized these principles by noting that

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1950. Finally, and particularly pertinent to this case, the requirement that a plaintiff's factual allegations "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" applies to all claimants, including those proceeding *pro se. Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (applying *Twombly* to *pro se* complaint). Thus, although a "*pro se* complaint 'must be held to less stringent standards than formal pleadings drafted by lawyers,'" a *pro se* plaintiff's "'obligation to provide the ground of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Thigpen v. McDonnell*, 273 F. App'x 271, 273 (4th Cir. 2008) (unpublished) (quoting *Erickson*, 551 U.S. at 94; *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)) (applying *Twombly* to *pro se* complaint).[14] Before applying these principles to plaintiff's various complaints, the threshold matter of incorporation by reference must be addressed.

### III.

Plaintiff in this case has filed two versions of his complaint and seeks now to file a third. The second, his first amended complaint, purports to "incorporate[] all allegations, claims, assertions, statements, and theories set forth or attempted to be set forth in the Original Complaint." First Am.

---

[14] *See also, e.g., Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("[E]ven a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Iqbal*, 129 S. Ct. at 1950)).

-8-

Compl. ¶ 1. The third version of his complaint, which he now seeks to file, similarly incorporates in wholesale fashion the entire first amended complaint. The question presented, therefore, is whether plaintiff's wholesale incorporation of previous versions of his complaints is an impermissible exercise of the incorporation privilege granted by Rule 10(c), Fed. R. Civ. P., which clearly provides that "[a] statement in a pleading may be adopted by reference . . . in any other pleading or motion." In this regard, it is well-settled, as a leading treatise notes, that incorporation by reference under Rule 10(c) "must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1326 (3d ed. 2004) (citing *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 17 (1st Cir. 2003) (same)), *quoted in Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006). This requirement of clarity ensures fairness to the responding party, for without this requirement incorporations "may prove confusing and inconvenient." 5A Wright & Miller, *supra*, § 1326. And the risk of such confusion and inconvenience is particularly high where, as here, a party seeks wholesale incorporation in an amended pleading of a superseded version of that same pleading. This is so because "[a]s a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 162 (2d Cir. 2000)).[15] This general rule, like Rule 10(c)'s clarity requirement, also has

---

[15] *See also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (2d ed. 1990) ("A pleading that has been amended . . . supersedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case.")), *cited in Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, ___ U.S. ___, 129 S. Ct. 1109, 1122 n.4 (2009) (observing in *dicta* that "[n]ormally, an

fairness as its purpose, for it breeds confusion and uncertainty if in responding to an amended pleading, a party is required to take into account a number of other, superseded pleadings. This is especially true with respect to a complaint, which serves as the "pleading that starts a civil action and states . . . the basis for the plaintiff's claim[] and the demand for relief." *Black's Law Dictionary* (8th ed. 2004) (defining "complaint"). In summary, although Rule 10(c) grants a pleader the privilege of incorporating "a statement" by reference, this privilege is not without limits, as it can easily be abused. Rule 10(c). Thus, wholesale incorporations—particularly those that seek to incorporate superseded versions of a complaint—must be examined with special care.[16]

These principles, applied here, point persuasively to the conclusion that plaintiff's attempts at wholesale incorporations of his prior complaints are a misuse of the Rule 10(c) incorporation privilege. For example, although the first amended complaint's incorporation paragraph broadly purports to "incorporate[] all allegations, claims, assertions, statements, and theories set forth or attempted to be set forth in the Original Complaint," plaintiff's first amended complaint also appears to be an otherwise independent pleading, as it both renumbers its paragraphs from 1 through 41 (as compared to 1 through 45 of the original complaint) and restates several of the original complaint's

---

amended complaint supersedes the original complaint") *and Young*, 238 F.3d at 572.

[16] Appropriately, the scant case law addressing wholesale incorporations by reference makes clear that a district court has broad discretion, based on the factual and procedural history of a particular case, to accept or to reject attempts at wholesale incorporation of superseded pleadings. *See, e.g., Carroll*, 470 F.3d at 1176 (finding wholesale incorporation clause "sufficiently specific" in light of "clear purpose . . . to satisfy the court's instruction and try to save the fraud claim, not to alter the other allegations in any way"); *McManus v. Williams*, 519 F. Supp. 2d 1, 5 (D.D.C. 2007) (accepting *pro se* amended complaint's wholesale adoption of original *pro se* complaint); *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 230 (W.D. La. 1999) (refusing to accept "sweeping adoption clause which serve[d] as nothing more that [sic] a boiler plate 'safety valve'").

allegations. First Am. Compl. ¶ 1. Indeed, it is clear that plaintiff made no effort in his incorporation clauses to be direct and explicit, nor has plaintiff even arguably enabled defendants to ascertain precisely which portions of the first and second amended complaints are not duplicative of their respective predecessors, but are intended to add new material.[17] Rather, plaintiff's sweeping incorporation clauses "serve[] as nothing more . . . [than] boiler plate 'safety valve[s].'" *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 230 (W.D. La. 1999). Although leave to replead might ordinarily be an appropriate remedy for abusing the incorporation privilege, it seems more fitting—now that plaintiff has filed three versions of the complaint—to overlook the incorporation issue and proceed to measure all three complaints against the Rule 8(a)(2)-*Twombly-Iqbal* standard[18] to determine whether in his three swings, plaintiff has hit a ball in play, or instead struck out.[19]

---

[17] In this regard, it is worth noting that plaintiff's second amended complaint does not contain jurisdictional allegations, leaving defendants to refer to prior versions of his complaint to ascertain the jurisdictional basis for plaintiff's claims.

[18] Importantly, the ruling here granting plaintiff's motion to file his second amended complaint does not render moot defendants' pending motion to dismiss plaintiff's first amended complaint. *See* 6 Wright, Miller & Kane, *supra*, § 1476 ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If . . . the defects raised in the original motion remain . . . , the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.").

[19] Of course, the Rules of Civil Procedure, unlike the rules of baseball, do not allow a batter to make insufficient contact—*i.e.*, a foul ball—*ad nauseum*. Rather, the Rules of Civil Procedure have fairness and clarity, not entertainment, as their purpose, and a plaintiff attempting to satisfy the Rule 8(a)(2)-*Twombly-Iqbal* standard must do more in his allegations than simply foul off a pitch. Put differently, to permit repleading here would allow plaintiff to benefit from his own failure to satisfy his burden of adequate pleading.

## IV.

The FCRA sets forth essentially two remedy provisions applicable to consumer suits against consumer reporting agencies such as defendants, namely (i) 15 U.S.C. § 1681n(a), which provides that a consumer reporting agency which "willfully fails to comply with any [FCRA] requirement . . . with respect to any consumer is liable to that consumer" for punitive damages and actual damages;[20] and (ii) 15 U.S.C. § 1681o(a), which provides that a consumer reporting agency which "is negligent in failing to comply with any [FCRA] requirement . . . with respect to any consumer is liable to that consumer" for the consumer's actual damages. In addition, both remedy provisions permit recovery of reasonable attorney's fees and costs. Plaintiff's second amended complaint, taken together with its incorporation of plaintiff's prior two complaints, purports to allege both willful and negligent violations by defendants of FCRA requirements imposed under essentially eight FCRA provisions, namely

- 15 U.S.C. § 1681b;
- 15 U.S.C. § 1681c–1;
- 15 U.S.C. § 1681e;
- 15 U.S.C. § 1681g;
- 15 U.S.C. § 1681h;
- 15 U.S.C. § 1681i;
- 15 U.S.C. § 1681j; and

---

[20] Section 1681n also provides, as an alternative to actual damages, statutory damages between $100 and $1,000 for each violation. *See* § 1681n(a)(1)(A).

- 15 U.S.C. § 1681m.

In addition, plaintiff purports to allege violations of Virginia state credit reporting laws, but plaintiff's only statutory reference is to a series of laws, namely Va. Code § 18.2-186.3 *et seq.*, and not to any specific statutory provision. Thus, with *Iqbal* and *Twombly* as the guiding principles, plaintiff's factual allegations with respect to each statutory provision at issue are addressed in turn.

First, § 1681b provides that consumer reporting agencies may not furnish a consumer's credit report to third parties except in the circumstances listed in § 1681b. In this respect, plaintiff apparently claims that each defendant has damaged him by providing consumer reports to third parties for impermissible purposes—*i.e.*, purposes not listed in § 1681b. Yet, plaintiff's various complaints contain no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. There are no factual allegations with respect to any specific credit reports that were provided to third parties for an impermissible purpose, nor does plaintiff set forth any factual allegations giving rise to a plausible claim that defendants violated § 1681b negligently, much less willfully. Rather, plaintiff appears to rest his § 1681b claim on the allegation that he "never gave any consent to [certain] inquiries being listed in his credit bureau reports." Compl. ¶ 9. First, such a broadly vague allegation, without more, does not "'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson,* 551 U.S. at 93 (quoting *Twombly,* 550 U.S. at 555). Indeed, although plaintiff claims he obtained copies of his credit reports from defendants in January 2009 and alleges that he "did not apply for anything with the listed creditors," plaintiff does not specify which listed creditors received information for an impermissible purpose. Compl. ¶ 10. Moreover, the plain language of § 1681b

makes clear that consumer consent simply is not a prerequisite to release of a consumer report to a third party. *See, e.g.,* § 1681b(c)(1)(B)(i)–(iii) (setting forth certain circumstances in which consumer initiation or consent is not required); *see also Stergiopoulos v. First Midwest Bancorp, Inc.,* 427 F.3d 1043, 1046 (7th Cir. 2005) (observing that § 1681 "does not require that consumers expressly approve each request for a report"). In addition, plaintiff's allegations appear internally inconsistent in this regard, as he both concedes that he "eventually applied for some credit lines" but alleges that the resulting credit inquiries (and hence, the reports provided by defendants) "did not have a permissible purpose." Compl. ¶¶ 19, 21.[21] In sum, it is pellucidly clear that plaintiff's allegations with respect to § 1681b do not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 129 at 1949 (quoting *Twombly,* 550 U.S. at 570). Accordingly, defendants' motion to dismiss plaintiff's § 1681b claims must be granted and those claims dismissed.

Second, § 1681c–1, which plaintiff alleges was violated only by Equifax, sets forth those circumstances in which a consumer reporting agency, at the request of a consumer and on receipt of "appropriate proof of . . . identity," must "include a fraud alert in the file of that consumer." § 1681c–1(a)(1)(A), (b)(1)(A). Section 1681c–1 also specifies certain circumstances where, again on

---

[21] Plaintiff's first and second amended complaints, in an apparent attempt to explain his failure to allege sufficient facts with respect to his § 1681b claim, allege that defendants' "refusal to disclose the permissible purpose . . . makes it impossible to determine whether the report [sic] was obtained with [sic] a permissible purpose." First Am. Compl. ¶ 19; Second Am. Compl. ¶ 18. Yet, it is plaintiff's burden to support his § 1681b claim with factual allegations, and defendants' alleged "failure" to set forth a permissible purpose for those (unspecified) reports being released does not excuse plaintiff's failure to comply with Rule 8(a)(2)'s pleading requirements.

receipt of "appropriate proof of . . . identity," a consumer may request that a fraud alert be removed from his file. *Id.* Yet, plaintiff's allegations do not specify that Equifax failed to place a particular, requested fraud alert on his credit report, nor does plaintiff allege any facts that give rise to a plausible inference that Exquifax did not properly respond to any appropriate request by plaintiff, supported by proper identification, to remove a particular fraud alert. To the contrary, plaintiff's original complaint alleges only (i) that he "requested that a [f]raud [a]lert be added to his credit" report; and (ii) that "Equifax willfully and negligently reported an entirely fictitious fraud alert in violation of FCRA § 1681c-1." Compl. ¶¶ 30, 40. Such allegations, notwithstanding the accompanying "[t]hreadbare legal recitals," do not support a claim for a § 1681c-1 *violation*, but rather suggest Equifax's *compliance* with the FCRA. *Iqbal*, 129 S. Ct. at 1949. Moreover, none of plaintiff's remaining factual allegations provide Equifax with "'fair notice of what the . . . claim is and the grounds upon which it rests'" with respect to § 1681c-1. *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).[22] Accordingly, defendants' motion to dismiss plaintiff's § 1681c-1 claim must be granted and that claim dismissed.

Third, plaintiff attempts to allege that defendants violated two distinct subsections of § 1681e, namely (i) § 1681e(a), which requires consumer reporting agencies to "maintain reasonable

---

[22] In addition to the original complaint's § 1681c-1 allegations, plaintiff's first and second amended complaints—which do not even mention § 1681c-1—allege that "[i]n June 2008, Experian added a 'fraud alert' to [p]laintiff's credit file." First Am. Compl. ¶ 15; Second Am. Compl. ¶ 14. Although it is unclear whether plaintiff mistakenly referred to Experian in this allegation (rather than Equifax, against which his original complaint alleged the § 1681c-1 violation), plaintiff does not provide any factual content on which to evaluate his § 1681c-1 claims. In any event, the confusing nature of plaintiff's allegations in this regard merely highlights the inconvenience thrust upon a responding party where, as here, a plaintiff attempts wholesale incorporation of a superseded complaint.

-15-

procedures . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b"; and (ii) § 1681e(b), which requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Yet, plaintiff plainly fails to plead facts to support either allegation. With respect to § 1681e(a), plaintiff "must first show that the reporting agency released [a] report in violation of § 1681b." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000), *quoted in Harris v. Database Mgmt. & Mktg., Inc.*, 609 F. Supp. 2d 509, 517 (D. Md. 2009). Thus, for the reasons stated *supra* regarding plaintiff's inadequate § 1681b allegations, plaintiff's § 1681e(a) allegations are likewise insufficient. With respect to the § 1681e(b) claim, plaintiff must show (i) that a particular "consumer report contains inaccurate information" and (ii) that "the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). Yet again, plaintiff's allegations are insufficient. More specifically, the sum total of plaintiff's allegations regarding any supposedly inaccurate information is as follows:

> The incorrect and incomplete Defendant(s) [sic] reporting includes, but is not limited to, the reporting of disputed fraudulent credit inquiries, disputed erroneous, inaccurate and incorrect addresses, [and] a disputed notation that inquiries were previously investigated per fraud.

First Am. Compl. ¶ 12. Simply put, such general and vague allegations are not adequate to show "that the pleader is entitled to relief," as required by Rule 8(a)(2), nor do they "'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's allegations fall short of giving rise to a plausible inference that he has a valid claim that defendants did not follow reasonable procedures to avoid any

possible inaccuracies. Accordingly, defendants' motion to dismiss plaintiff's § 1681e claims must be granted and those claims dismissed.

Fourth, plaintiff claims that defendants violated § 1681g, which requires that consumer reporting agencies must, at the consumer's request, disclose certain information in the consumer's credit report. In this regard, plaintiff's only factual allegations appear to be (i) that on certain occasions, defendants did not respond to letters sent by plaintiff; and (ii) that, at various (unidentified) times, defendants have blocked plaintiff's access to their websites and a third party's website (www.myFICO.com).[23] But plaintiff's various allegations do not give any reason to believe his letters (the contents of which plaintiff does not describe) imposed a duty to respond on defendants under § 1681g, nor do plaintiff's allegations give rise to a plausible inference that defendants blocked any websites in a manner contrary to § 1681g's provisions. In sum, plaintiff's § 1681g allegations are merely "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 129 S. Ct. at 1949. Accordingly, defendants' motion to dismiss plaintiff's § 1681g claims must be granted and those claims dismissed.

Next, plaintiff's remaining four FCRA claims are patently meritless. First, plaintiff alleges that defendants violated § 1681i, which requires consumer reporting agencies to conduct

---

[23] Plaintiff's first amended complaint also contains a conclusory legal allegation that defendants "willfully and negligently failed to provide consumer disclosures, blocked [p]laintiff's myFICO credit reports, failed to provide complete consumer disclosures, failed to provide a summary of all rights, resold data to resellers who sold incomplete consumer disclosures and failed to provide a summary of all rights in violation of . . . § 1681g." First Am. Compl. ¶ 26. Of course, these "[t]hreadbare recitals . . . , supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Moreover, plaintiff's second amended complaint omits any mention of § 1681g, further illustrating the confusion resulting from plaintiff's wholesale incorporation by reference.

reinvestigations of allegedly inaccurate information contained in credit reports in certain circumstances. But plaintiff's claim in this regard fails for the same reasons explained *supra* with respect to his § 1681e(b) inaccurate information claim. This is so because a consumer who brings a § 1681i failure to reinvestigate claim must first show that his "credit file contains inaccurate or incomplete information." *Thomas v. Trans Union, LLC*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002). Given that plaintiff has failed to adduce facts that might allow a plausible inference that his credit reports contained any particular inaccurate information, plaintiff's § 1681i claim fails. Second, plaintiff alleges that defendants violated § 1681h, which provides that consumer reporting agencies must "provide trained personnel to explain to the consumer any information furnished to him pursuant to section 1681g." In addition to being internally inconsistent with plaintiff's allegation that he never *received* any § 1681g disclosures, plaintiff does not provide any factual content explaining which of defendants' personnel were inadequately trained, nor does plaintiff specify how any such inadequate training harmed him. Third, plaintiff claims that defendants violated § 1681j, which governs the monetary charges that consumer reporting agencies may and may not charge for providing certain disclosures. Yet, plaintiff's allegations do not specify which (if any) disclosures (which he elsewhere claims he never received) were the subject of inappropriate charges, nor does plaintiff otherwise "'give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Finally, plaintiff's § 1681m claim against defendants fails, as § 1681m imposes certain requirements on parties

*obtaining* credit reports, not on consumer reporting agencies, such as defendants.[24] Thus, defendants' motion to dismiss plaintiffs's claims under §§ 1681h, 1681i, 1681j, and 1681m must be granted and those claims dismissed.[25]

With respect to plaintiff's allegations that defendants violated Virginia law, plaintiff's allegations are (i) that defendants "fail[ed] to correct wrong information" and (ii) that defendants "failed to follow reasonable procedures to assure maximum possible accuracy of the information relating to the consumer who is the subject of the consumer report." First Am. Compl. ¶¶ 36, 37. Yet, these allegations, like plaintiff's § 1681 allegations, are nothing "more than labels and conclusions, and [thus] . . . will not do." *Twombly*, 550 U.S. at 555. Accordingly, defendants' motion to dismiss plaintiff's state-law claims must be granted and those claims dismissed.

In the end, to hold that plaintiff's allegations satisfy Rule 8(a)(2) and survive defendant's Rule 12(b)(6) motion to dismiss would render Rule 8(a)(2), *Iqbal*, and *Twombly* meaningless. Indeed, Rule 8(a)(2)'s pleading requirements, at their core and as interpreted in *Iqbal* and *Twombly*, are intended (at the very least) to ensure fairness to defendants where, as here, a litigious plaintiff clogs yet another federal court with his frivolous claims and supports those claims with nothing "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 129 S. Ct.

---

[24] In this regard, plaintiff attached several letters from third-party credit vendors to his second amended complaint. Yet, these letters do not rescue plaintiff's complaints, as they merely show that plaintiff was (perhaps validly) denied credit by a wide range of third-party creditors, *not* that defendants violated the FCRA.

[25] In addition to the section-by-section analysis herein, it is also worth noting that plaintiff generally fails to allege sufficient facts with respect to the willfulness requirement of § 1681n or the negligence requirement of § 1681o, which are (respectively) elements plaintiff must satisfy to receive relief for an FCRA violation.

at 1949.[26] Put differently, plaintiff has the burden to plead with clarity and reasonable factual

specificity, which he has failed to do. To permit him to proceed on the basis of the anemic factual

allegations in his complaints would contravene *Twombly*'s warning that "before proceeding to

discovery, a complaint must allege *facts* suggestive of illegal conduct." 550 U.S. at 563 n.8

(emphasis added).[27] In sum, all three versions of plaintiff's complaint fail to pass muster when

measured against the Rule 8(a)(2)-*Twombly-Iqbal* standard.[28] Put another way, plaintiff has swung

and missed three times; he is therefore out.[29]

---

[26] In this regard, the Rule 8(a)(2)-*Twombly-Iqbal* standard of civil procedure, like the Infield Fly Rule of baseball, is based on fairness, and "[f]ormalism [must be] altered to the extent necessary to achieve justice in the particular case." William S. Stevens, *The Common Law Origins of the Infield Fly Rule*, 123 U. Pa. L. Rev. 1474, 1480 (1975). Thus, the Supreme Court's *Iqbal-Twombly* elucidation of Rule 8(a)(2)'s plain language, like the Infield Fly Rule's evolution in baseball, illustrates the "the way in which common law precedents are employed to mold existing remedies to new situations." *Id.*

[27] *See also Twombly*, 550 U.S. at 559 (discussing "[r]eport[] that discovery accounts for as much as 90 percent of litigation costs when discovery is actively employed" (citing Mem. from Hon. Paul V. Niemeyer, Chair, Advisory Comm. on Civil Rules, to Hon. Anthony J. Scirica, Chair, Comm. on Rules of Practice and Procedure (May 11, 1999), 192 F.R.D. 354, 357 (2000))).

[28] Moreover, because plaintiff proceeds *in forma pauperis*, his claims are equally worthy of dismissal as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) or, under § 1915(e)(2)(B)(ii), for failing to state a claim on which relief may be granted.

[29] In defendants' supplemental memorandum in support of their motion to dismiss, defendants seek an order enjoining plaintiff from filing *any* lawsuit in the Eastern District of Virginia without first obtaining leave to do so. Defendants raised this request for the first time in that supplemental memorandum (and notably, not in any formal motion), and plaintiff has not received an adequate opportunity to respond. Accordingly, defendants' request for an injunction is not addressed here, as it is not properly before the Court.

An appropriate Order will issue.


August 11, 2009
Alexandria, VA

T. S. Ellis, III
United States District Judge